[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Defendant-appellant Flex-Tech Professional Services ("Flex-Tech") appeals the trial court's decision granting summary judgment in favor of plaintiff-appellee, Big Chief Supply Inc. ("Big Chief") and denying Flex-Tech's motion for relief from judgment in an action to collect on a past due account. For the following reasons, we affirm the judgment of the trial court.
In August 2000, four months after filing its complaint alleging that Flex-Tech owed $48,451.57 on a past due account, Big Chief moved for summary judgment. On September 11, 2000, Flex-Tech moved to file an amended answer for the purpose of pleading the affirmative defense that General Motors ("GM") was the actual liable party on the account. Flex-Tech maintains it was acting as GM's agent when placing purchase orders with Big Chief. Attached to Flex-Tech's motion was a copy of the proposed amended answer and a copy of the third-party complaint against GM. Both of these documents were signed. Although the trial court granted the motion to amend the following day, Flex-Tech did not file the third-party complaint until December 14, 2000, three weeks after summary judgment had been entered against Flex-Tech.[1]
Working under the assumption that it had already properly filed its third-party complaint against GM, Flex-Tech responded to Big Chief's summary judgment motion arguing that summary judgment would be premature as GM has not yet been named as a party in the action. With their response, Flex-Tech attached a copy of the alleged agreement between GM and Flex-Tech that established the purported principle-agent relationship. Notably, the signature page of this agreement was not included. On October 5, 2000, the trial court, concluding that Flex-Tech had not provided adequate evidence to prove its affirmative defense of GM being the liable party, entered summary judgment in favor of Big Chief. Flex-Tech then moved for relief from judgment. On November 29, 2000, the trial court overruled this motion and issued a judgment entry awarding Big Chief $48,451.57.
In its first assignment of error, Flex-Tech argues that summary judgment was improperly granted in favor of Big Chief and that the trial court erred in denying Flex-Tech's motion for relief from judgment.
An appellate court reviews the record de novo to determine whether summary judgment is appropriate.[2] Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[3] The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[4] Once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest on mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."[5]
As the moving party for summary judgment, Big Chief had the burden to present evidence that demonstrated, as a matter of law, Flex-Tech owed $48,451.57 on a past due account and that there were no disputes as to material facts in this regard. Big Chief submitted the affidavit of Jim Howe, the president of Big Chief, a copy of a purchase order and business records of accounts receivable that identified Flex-Tech as the debtor.[6] We hold that the evidence presented by Big Chief satisfied their burden under Dresher. A copy of an accounts receivable record ordinarily meets the requirement of stating an account.[7] Further, competent oral testimony is admissible to prove the existence of an account.[8] Here, Big Chief submitted a copy of an accounts receivable record which named Flex-Tech as the debtor, listed a starting sum or balance, listed invoice numbers, dates of purchases, prices of products, and the total amount past due. Further, Howe testified in his affidavit that Flex-Tech owed Big Chief $48,451.57.
As an account was shown to exist, the burden now shifted to Flex-Tech to produce evidence demonstrating that there were genuine issues of material fact remaining. Flex-Tech first maintains that it is not liable on this account as a matter of law because it was acting as an agent for the disclosed principal, GM, in all of its dealings with Big Chief.[9]
To support this contention, Flex-Tech submitted two documents entitled "Delphi Packard Electric Systems Commodity Management Program For Electrical/Electronics" and "General Motors Corporation Contractors Intellectual Property Rights Agreement." Because neither of these documents was signed, we hold that they were not the type of evidence contemplated by Civ.R. 56(C) to prove the existence of a contractual agent/principal relationship between GM and Flex-Tech. Flex-Tech claims that two other Ohio trial courts, in lawsuits similar to the case at bar, found that an agency relationship existed between Flex-Tech and GM. However, Flex-Tech cannot "rely on mere allegations," but must provide evidence as contemplated in Civ.R. 56(C). Flex-Tech did not submit any evidence, such as copies of these two decisions, to the court. Accordingly, Flex-Tech had submitted no appropriate evidentiary materials to the trial court to demonstrate that it placed orders with Big Chief as an agent of GM.
Flex-Tech next argues that there is a genuine issue of material fact as to the amount owed on the account. Because the goods were shipped to Delphi, pursuant to Flex-Tech's request, Flex-Tech maintains that it had no knowledge if the goods were ever delivered, if the goods conformed to the purchase order, or if GM accepted or rejected the goods. Again, Flex-Tech cannot rely on mere allegations and, as it did not produce any evidence to support the purported claim that nonconforming goods were delivered to GM, an issue of fact has not been demonstrated.
Finally Flex-Tech argues that summary judgment was entered prematurely because all of the necessary parties, namely GM, were not included in the action and that further discovery needed to be conducted. Pursuant to Civ.R. 56(F), a trial court has discretionary authority, upon a stated legitimate reason, to delay consideration of a motion for summary judgment until the nonmoving party has time to conduct discovery needed to adequately respond to the motion.[10] We conclude that that the trial court did not abuse its discretion in denying an extension of time for Flex-Tech to conduct discovery with GM because the trial court did not have jurisdiction to compel GM to enter into discovery with Flex-Tech because GM was not a party to the action at this time. Although the trial court had granted Flex-Tech's motion to amend its answer and file a third-party complaint against GM on September 12, 2000, Flex-Tech did not file the complaint until December 14, 2000, three months after the court had granted permission. If Flex-Tech had filed the third-party complaint prior to October 5, 2000, the date of summary judgment, then the trial court may have been provided with a legitimate reason to delay consideration of the summary judgment motion. Because Flex-Tech took no action, the trial court properly considered the summary judgment motion. Between the parties in the action at that time, the trial court had "sufficient evidence before it to make a just and proper decision."[11]
Accordingly, based on our holding that Flex-Tech did not produce appropriate evidentiary materials as required under Civ.R. 56(C) to support its claims, we find that there remain no genuine issues of material fact and that, as a matter of law, the trial court properly granted summary judgment in favor of Big Chief.
Flex-Tech moved for relief from judgment under Civ.R. 60(B)(5) on the basis that summary judgment was improperly granted and submitted the affidavit of Cecil Weatherspoon, its CEO, which stated that the amount of money owed to Big Chief was less than $48,000, that Flex-Tech was an acting as an agent of GM in all of its dealings with Big Chief, and that Flex-Tech had no knowledge of whether GM has any claims for set-off due to receiving non-conforming goods. As we held that summary judgment was properly granted in this matter, we conclude that the trial court properly denied Flex-Tech's motion for relief from judgment. Although Weatherspoon testified in his affidavit that Flex-Tech was acting as an agent of GM in all its dealings with Big Chief, this evidence was not before the trial court when considering the summary judgment motion. Accordingly, the first assignment of error is overruled.
In its second assignment of error, Flex-Tech maintains that the trial court erred in admitting evidence of settlement negotiations between Flex-Tech and Big Chief. Settlement offers are not admissible for purposes of proving liability or the amount of damages owed.[12]
Big Chief had submitted a letter dated February 17, 2000 from Weatherspoon to Big Chief outlining a "concrete payment plan" on Flex-Tech's account balance. As this letter does not mention that Flex-Tech is trying to settle any claim, but merely states the dates that it will make payments on its account balance, we find that this is not an offer of settlement that needs to be excluded from evidence. Even if this letter was inadmissible, there was no prejudice to Flex-Tech as the record demonstrates that the trial court did not rely on this letter in making its decision. The trial court only focused on the affidavit of Jim Howe and the accounts receivable records to determine the amount owed on the account. Accordingly, the second assignment of error is overruled and the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Hildebrandt and Winkler, JJ.
[1] From our review of the record, it appears that Flex-Tech mistakenly thought that it had filed its amended answer and the third-party complaint when it had attached copies of those signed documents to their motion.
[2] Wille v. Hunkar Laboratories, Inc. (1998), 132 Ohio App.3d 92,724 N.E.2d 492.
[3] See State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[4] See Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293,662 N.E.2d 264, 273-274.
[5] Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111, 570 N.E.2d 1095; Dresher,75 Ohio St.3d at 294-95.
[6] The business record of the accounts receivable was actually attached to the complaint and not the summary judgment motion. Pursuant to Civ.R. 56(C), a court may consider the complaint in determining if summary judgment is appropriate.
[7] See Brown v. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123,223 N.E.2d 373.
[8] Gabriele v. Reagan (1988), 57 Ohio App.3d 84, 566 N.E.2d 684
citing American Security Service v. Baumann (1972), 32 Ohio App.2d 237,289 N.E.2d 373, paragraph four of the syllabus.
[9] Flex-Tech maintains that it contracted with GM to act as GM's outsource manager and accordingly, placed all electronic purchase orders for Delphi, a subsidiary of GM.
[10] See Civ.R. 56(F); Fair v. Litel Communication, Inc. (Mar. 12, 1998), Franklin App. No. 97APE06-804, unreported.
[11] Tucker v. Webb Corporation (1983), 4 Ohio St.3d 121, 122,447 N.E.2d 100, 101.
[12] See Evid.R. 40